1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LOUGHLIN,<br><br>               Plaintiff,<br><br>vs.<br><br>VENTRAQ, INC., a Delaware corporation,<br>formerly TELESCIENCES, INC.,<br><br>               Defendant. | **CASE NO: 10-CV-2624-IEG (BGS)**<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION TO<br>DISMISS**<br><br>[Doc. No. 6] |

Presently before the Court is Defendant's motion to dismiss Plaintiff's claims or to compel arbitration.  [Doc. No. 6.]  For the reasons stated herein, the Court **GRANTS** Defendant's motion and dismisses Plaintiff's complaint.

## BACKGROUND

Unless otherwise indicated, the following facts come from Plaintiff's complaint [Doc. No. 1] or his declaration.  [Pl.'s Opp'n, Doc. No. 8, Ex. A ("Loughlin Decl.").]

Plaintiff John Loughlin moved from London to California in 1993 and since has remained a legal resident of California.  Plaintiff thereafter founded a consulting business, Ruby White Enterprises, Inc. ("Ruby White").  In 1996, IDT/Alston contracted with Plaintiff for consulting services.  In 1998, Telesciences, Inc. ("Telesciences") acquired IDT/Alston.  Telesciences also contracted for Plaintiff's consulting services.

In December 1999, EDB Business Partners ASA ("EDB"), a Norwegian company, acquired Telesciences.  Plaintiff became an employee of Telesciences in 2002.  Plaintiff's consulting company continued doing in business in San Diego, and he remains President and CEO of Ruby White.

In 2003, Plaintiff entered into an employment contract with Telesciences.  In 2004, EDB decided to sell its telecom interests.  Telesciences' U.S. management team agreed to purchase the U.S. portion of EDB's business in 2005.  A new company, Telesciences Acquisition Corporation ("TAC") was organized to purchase Telesciences from EDB.  Plaintiff was a principal of TAC.

In September 2005, EDB sold Telesciences to TAC for cash and a promissory note to be repaid by the end of March 2006.  TAC agreed operate under a Share Purchase Agreement with EDB until it repaid the promissory note.

In 2005 Plaintiff's and several other TAC executives' employment contracts were amended.  TAC's legal counsel drafted the agreements.  While negotiating his new employment agreement, Plaintiff consulted personal legal counsel in San Diego.  A proposed version of Plaintiff's employment agreement included a clause stating that any dispute arising under the contract will be submitted upon either party's request to binding arbitration, and specifying the venue for such arbitration as Mt. Laurel, New Jersey.  After seeking advice from his personal counsel, Plaintiff requested the arbitration clause and venue provision be removed.  Greg Fegley, then-CEO of TAC, consulted with TAC's legal counsel and refused Plaintiff's request.

On December 23, 2005, Plaintiff signed an employment agreement with TAC (the "Agreement"), which included a mandatory arbitration clause, a venue provision, and a choice-of-law clause specifying that New Jersey law governs the Agreement.[1]  [Complaint, Ex. A (the Agreement),

---

[1] The arbitration clause provides:

In the event any claim, demand, cause of action, dispute, controversy or other matter in question ("Claim") arises out of this Agreement (or its termination) or the Employee's employment (or termination of employment) by [Defendant], then, upon written request of either party, such dispute or controversy will be submitted to binding arbitration.  Any arbitration will be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (the "AAA") or other rules of the AAA as applicable to the claims asserted.  The results of the arbitration will be binding and conclusive on the parties hereto.  All parties agree that venue for the arbitration will be in Mt. Laurel, New Jersey.  The Arbitrator shall have the power to award the payment of the costs of the arbitration process, inclusive of legal fees,

§§ 22, 23.]  The Agreement also included a noncompetition clause, which precluded Plaintiff from competing with Ventraq "during the Term of Employment and for a period of (1) year thereafter."  [Id. § 9.]  Additionally, the Agreement required the company to provide notice to Plaintiff at least ninety days prior to any termination of Plaintiff's employment without cause, non-renewal of the Agreement, or "Adverse Change,"[2] during which time Plaintiff would continue to receive his full salary and all medical, pension, and other employment benefits.  [Id. §§ 1, 12.]  Plaintiff would continue to receive his base annual salary of $225,000 and all employment benefits for a period of nine months following any such occurrence.  [Id. § 12.]  The Agreement bound all successors and assigns of the Company. [Id. § 19.]

In March 2006, Spire Capital Partners, LLC ("Spire"), acquired Telesciences from TAC. Telesciences changed its name to Ventraq in 2009.

Although Ventraq is based in New Jersey, Plaintiff claims he continued to reside in San Diego during his employment with the company.  Plaintiff generally worked from San Diego, though he traveled often during the course of his employment with Ventraq.  When in New Jersey, he worked in a cubicle in Ventraq's office assigned for visitors.[3]

On August 17, 2010, Plaintiff received a call from Bruce Hernandez, chairman of the board for Ventraq.  Mr. Hernandez informed Plaintiff that he and two other executives, CEO Trudeau and Senior

---

witness fees and expenses, to the prevailing party, in his discretion.  All proceedings conducted pursuant to this Section 22 will be kept confidential by all parties.  THE ARBITRATOR SHALL HAVE NO AUTHORITY TO AWARD PUNITIVE DAMAGES UNDER ANY CIRCUMSTANCES (WHETHER IT BE EXEMPLARY DAMAGES, TREBLE DAMAGES, OR ANY OTHER PENALTY OR PUNITIVE TYPE OF DAMAGES).   THE EMPLOYEE ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE IS WAIVING ANY RIGHT THAT HE MAY HAVE TO A JURY TRIAL OR A TRIAL BEFORE A JUDGE IN CONNECTION WITH, OR RELATING TO, A CLAIM.

[Agreement, § 22.]

[2] The Agreement defined "Adverse Change" to include reclassification of position or duties to those below a senior executive officer, decrease in compensation, relocation of primary office of more than twenty miles, or a substantial increase in travel requirements.   [Agreement ¶ 13.]

[3] Defendant disputes this, claiming Plaintiff was based in New Jersey and maintained a home in nearby Philadelphia, Pennsylvania, during his employment with Ventraq. [Def.'s Mot. to Dism., Doc. No. 6, at 2.]

Vice President of Global Sales and Marketing, Richard Evans, were being terminated.  Hernandez told Plaintiff that his termination was part of an economic reduction in force at Ventraq.

On August 27, 2010, Plaintiff received an email from Ventraq stating that the company had terminated Plaintiff's employment "for cause," alleging Plaintiff had violated the covenant not to compete with Ventraq during the course of his employment.  Ventraq claimed that Plaintiff authored a presentation to "WeDo Technologies," an alleged competitor of Ventraq. [4]

Plaintiff subsequently filed the instant action, arguing that he did not violate the Agreement and is thus entitled to the severance benefits outlined therein.  Plaintiff also alleges that, at the time of his termination, he had accrued forty-nine unused vacation days and one additional "personal day" and is therefore entitled to payment of approximately $44,000 and statutory damages of approximately $18,500.  Plaintiff asserts claims for breach of contract, for failure to pay wages and benefits under California Labor Code sections 201 and 203, and for declaratory judgment that the Agreement's mandatory arbitration and noncompetition clauses are unenforceable under California law.

## DISCUSSION

Defendant moves to dismiss these proceedings or compel arbitration.  Defendant argues the Agreement requires arbitration of Plaintiff's claims.  Plaintiff does not dispute that his claims fall within the scope of the Agreement's arbitration clause.  Instead, Plaintiff argues the arbitration clause, the forum selection provision, and the choice-of-law clause are unenforceable.

## I.   Arbitration Clause

### A.   Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "Federal policy favors arbitration," but not every arbitration agreement is valid.  Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007) (citing Gilmer v.

---

[4] Defendant claims the presentation took place "in the late spring or summer of 2010," prior to the termination of Plaintiff's employment.  [Def.'s Mot. to Dism., at 3.]  Plaintiff claims the alleged presentation occurred on August 20, 2010, after his employment was terminated.  [Loughlin Decl., ¶ 20.]  Plaintiff also claims WeDo Technologies does not compete with Defedant.  [Id.]

Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991)).  "In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'"  Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 782 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  Although "the FAA clearly enunciates a congressional intention to favor arbitration, general contract defenses such as unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc., 560 F.3d 935, 940 (9th Cir. 2009) (internal quotation marks, alterations, and citations omitted).  If a district court decides an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration.  Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1276-77 (9th Cir. 2006).

"California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general." Abrahmson v. Jupiter Networks, Inc., 115 Cal. App. 4th 638, 651 (2004) (quoting Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 971-72 (1997) (internal citations omitted)); see Cal. Civ. Proc. Code § 1280 et seq.; Moncharsh v. Heily & Blase, 3 Cal. 4th 1, 9 (1992) ("[The California] Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.") (internal quotation marks and citations omitted).  Despite the strong policy favoring arbitration, courts will not enforce arbitration provisions that are contrary to public policy or unconscionable.  Abrahmson, 115 Cal. App. 4th at 651 (citing Armendariz v. Foundation Health Psychare Servs., Inc., 24 Cal. 4th 83, 99 (2000)).

To decide whether an arbitration provision is enforceable, the Court must first "determine whether the agreement implicates public or private rights."  Id. at 651-52.  "[A]n arbitration agreement may not function so as to require employees to waive potential recovery for substantive statutory rights established 'for a public reason.'"  Davis, 485 F.3d at 1082 (internal citations omitted).  "Where the plaintiff's claims arise from unwaivable public rights, . . . the arbitration agreement must satisfy the minimum requirements set forth in Armendariz."  Abrahmson, 115 Cal. App. 4th at 652 (citing Little v. Auto Steigler, Inc., 29 Cal. 4th 1064, 1076-81 (2003)).  If the arbitration provision satisfies the

Armendariz requirements, it still must be conscionable.  Where, however, "the plaintiff asserts private rights rather than (or in addition to) unwaivable public rights, the agreement to arbitrate those claims is tested only against conscionability standards."  Id. (citing Armendariz, 24 Cal. 4th at 113-14).

**B.     Plaintiff's Claims**

1.     Plaintiff's Claims Related to Contractual Rights

The allegations at the center of Plaintiff's complaint relate to the nature of his termination and whether he is entitled to severance benefits under the Agreement.  Namely, Plaintiff alleges Defendant terminated his employment without cause, and he is therefore entitled to severance benefits as outlined in Sections one and twelve of the Agreement.  Plaintiff attempts to attach these allegations to a public policy interest of the State of California by claiming his termination under the Agreement's noncompete clause contravenes California's prohibition of post-employment noncompete agreements. [See Pl.'s Opp'n, at 3-4 (discussing Cal. Bus. & Prof. Code § 16600).]

California Business and Professions Code sections 16600-16607 prohibit most post-employment noncompete agreements, though certain such agreements are permitted.  See, e.g., Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer, 2005 WL 6583937, at *8 (N.D. Cal. Feb. 22, 2005) (noting that post-employment noncompete agreements protecting a former employer's "'confidential, proprietary, and/or trade secret'" information" do not run afoul of Section 16600) (quoting Thompson v. Impaxx, Inc., 113 Cal. App. 4th 1425, 1429-30 (2003)).

Defendant asserts it terminated Plaintiff's employment in response to competitive actions occurring *during* Plaintiff's employment.  [See Complaint, Ex. C (Defendant's letter of termination to Plaintiff).]  Defendant claims it terminated Plaintiff because he authored a presentation made to a competitor and sought to poach other employees and a supplier of Defendant for the purpose of creating a competing business.  [Id.]  However, Plaintiff disputes that he violated the noncompete clause at all.

Plaintiff correctly points out that the prohibition of post-employment noncompete agreements represents a fundamental state policy.  Edwards v. Arthur Andersen LLP, 44 Cal.4th 937, 949 (2008) ("[S]ection 16600 represents a strong public policy of the state [of California.]").  But Plaintiff does

6

not dispute that section 16600 does not affect an employee's duty not to compete with an employer *during the course of his employment*.  Nor does Plaintiff dispute that, as an officer of the company, he had a fiduciary duty not to compete during his employment.

In fact, since his termination from employment, Defendant has not attempted to restrain Plaintiff from engaging in business of any kind.  To the contrary, Plaintiff states he continues to run a consulting business in San Diego.  Thus, section 16600 is not relevant to Plaintiff's contractual claims, and neither are the <u>Armendariz</u> factors for arbitrating public rights. Whether Plaintiff's claims are arbitrable depends instead on whether the arbitration clause is conscionable.

The doctrine of unconscionability renders an arbitration clause unenforceable only if the clause is both procedurally and substantively unconscionable.  <u>Armendariz</u>, 24 Cal. 4th at 113.  Procedural unconscionability concerns the nature of the contract's negotiation, and focuses on whether "oppression or surprise due to unequal bargaining power" prevented a meaningful opportunity to negotiate.  <u>Little</u>, 29 Cal. 4th at 1071; <u>see</u> <u>Ferguson v. Countrywide Credit Indus., Inc.</u>, 298 F.3d 778, 783 (9th Cir. 2002).  "Courts have found employment contracts oppressive where they are drafted by the employer and presented to the employee on a take-it-or-leave-it basis." <u>Gelow v. Cent. Pac. Mortg. Corp.</u>, 560 F. Supp. 972, 980 (C.D. Cal. 2008); <u>see also</u> <u>Little</u>, 29 Cal. 4th at 1071 ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion.").

Plaintiff has not alleged facts demonstrating procedural unconscionability.  First, the contract was not a mass-produced form-agreement drafted by the employer and issued to employees, and was thus not a contract of adhesion.  <u>See</u> <u>Armendariz</u>, 24 Cal. 4th at 113 (defining adhesion contracts as standardized agreements "imposed and drafted by the party of superior bargaining strength, [which] relegate[] to the subscribing party only the opportunity to adhere to the contract or reject it."); <u>Yeng Sue Chow v. Levi Strauss & Co.</u>, 49 Cal. App. 3d 315, 325 (1975) ("[C]*ontracts of adhesion* are the product of mass production and afford the party to whom they are tendered little, if any room in which to bargain . . . .") (emphasis in original).  Second, Plaintiff has not alleged the company presented him with the agreement and told him to "take it or leave it," or that anyone threatened or otherwise improperly influenced Plaintiff to induce him to agree to the contract's provisions.  <u>See</u> <u>Circuit City Stores, Inc. v. Mantor</u>, 335 F.3d 1101, 1106-07 (9th Cir. 2003) (finding an arbitration agreement

procedurally unconscionable where management pressured the plaintiff to accept and even "threaten[ed] his job outright should [he have exercised] his putative 'right' to opt-out").

Plaintiff relies on <u>Abrahmson v. Jupiter Networks, Inc.</u> for the proposition that, although Plaintiff was an executive level employee who negotiated the terms of the Agreement, "Plaintiff's ability to negotiate other aspects of his employment with [his employer] has no bearing on the question of whether he had power to negotiate the *arbitration* provision."  115 Cal. App. 4th at 662 (citing <u>Graham v. Scissor-Tail, Inc.</u>, 28 Cal. 3d 807, 819 (1981)).  But <u>Abrahmson</u> does not support Plaintiff's position under the circumstances of this case.

Unlike in this case, the plaintiff in <u>Abrahmson</u> "was not permitted to negotiate the terms of the Offer Letter or the Employment Agreement, but was given to understand that all [of the defendant's] employees were required to sign these documents as a condition of employment."  <u>Id.</u> at 663.  Moreover, the contract in <u>Abrahmson</u> expressly stated that accepting the arbitration provision was a condition of employment.  <u>Id.</u> (the plaintiff was "offered employment in consideration of [his] promise to arbitrate claims") (alteration in original).  Under those circumstances, the arbitration clause was procedurally unconscionable.

Here, Plaintiff was senior executive and a principal shareholder in the company when he negotiated and entered into the Agreement.  [<u>See</u> Loughlin Decl. ¶¶ 6-7.]  Plaintiff claims he reviewed the proposed agreement, consulted independent legal counsel, and requested removal of the arbitration clause.  [Pl.'s Opp'n, at 5-6.]  Plaintiff has not alleged the arbitration clause was a condition of his employment, or that he would have suffered any consequences had he refused to accept it.  Moreover, Plaintiff concedes he had an opportunity negotiate the arbitration clause, even if he was ultimately unsuccessful.  The fact that Plaintiff would have preferred the Agreement not include the arbitration clause, by itself, does not render the clause procedurally unconscionable.

Because the arbitration clause is not procedurally unconscionable, the Court need not examine the substantive conscionability of the arbitration clause.  <u>Armendariz</u>, 24 Cal. 4th at 113-14 (both procedural and substantive unconscionability must be present to render an agreement unenforceable).  The arbitration clause is enforceable.  Where an arbitration agreement is valid and enforceable, the Court should either stay or dismiss claims subject to arbitration.  <u>Nagrampa v. MailCoups, Inc.</u>, 469

8

F.3d 1257, 1276-77 (9th Cir. 2006).  Accordingly, Plaintiff's claims relating to the nature of his termination and his severance benefits are **DISMISSED**.

2.      California Labor Code Sections 201 and 203

Plaintiff claims he had accrued unused vacation benefits worth approximately $44,000 at the time Defendant terminated his employment.  "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Cal. Lab. Code § 201(a).  The term "wages" includes "those benefits to which an employee is entitled as part of his or her compensation, including . . . vacation pay[] and sick pay."  Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1084, 1091 (2007) (internal citations omitted).  Section 203 of the Labor Code subjects an employer who refuses to pay wages to a discharged employee in accordance with Section 201 to penalties: "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).  Sections 201 and 203 implement a fundamental public policy of the State of California.  Smith v. Superior Court, 39 Cal. 4th 77 (2006); see also Armendariz, 24 Cal. 4th at 102 (endorsing "the basic principle of nonwaivability of statutory civil rights in the workplace").  Thus, Plaintiff's cause of action under the Labor Code is only arbitrable if the arbitration clause satisfies the Armendariz requirements.  See Abrahmson, 115 Cal. App. 4th at 652.

Under Armendariz, an agreement to arbitrate employment claims relating to public policies must satisfy five requirements: (1) it must provide for adequate discovery; (2) it must require a written decision allowing for limited judicial review; (3) it must permit all types of relief that would be available in court; (4) it must not require employees to pay forum costs unique to arbitration—i.e., any type of expense the employee would not incur if she sought to enforce his rights in court; and (5) as with all contractual arbitration, it must provide for a neutral arbitrator.  Armendariz, 24 Cal. 4th at 91, 103, 110-11; see also Abrahmson, 115 Cal. App. 4th at 653.

The arbitration clause in this case does not require a written decision allowing for judicial review—indeed, it appears to prohibit judicial review; it does not permit punitive damages, defined in

9

the Agreement to include "any . . . penalty" damages[5]; and it affords the arbitrator discretion to award payment of *all* arbitration costs to the prevailing party.  [Agreement, § 22.]  Because the arbitration clause fails to satisfy the <u>Armendariz</u> requirements it is unenforceable as to Plaintiff's claims under the California Labor Code.  <u>See</u> <u>Abrahmson</u>, 115 Cal. App. 4th at 661 ("Given our conclusion that this agreement fails to satisfy the requirements of <u>Armendariz</u>, we need not consider its conscionability with respect to plaintiff's public rights.").

Plaintiff asserts jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction).  While the parties appear diverse, Plaintiff calculates the amount in controversy related to his claim under the Labor Code at approximately $63,000.  [<u>See</u> Complaint, ¶¶ 8, 11 (calculating the value of Plaintiff's accrued and unused vacation benefits at $44,131.81) and 18-19 (calculating Plaintiff's statutory damages under section 203 at $18,493.15).]  Thus, Plaintiff's claim under the Labor Code does not meet the minimum requirements for diversity jurisdiction.  <u>See</u> 18 U.S.C. § 1332(a) (requiring the amount in controversy to exceed $75,000).  Accordingly, Plaintiff's claim under sections 201 and 203 of the California Labor Code is **DISMISSED**.

## II.    Forum Selection Provision

The arbitration clause includes a forum selection provision, which provides the "venue for arbitration will be in Mt. Laurel, New Jersey."  [Agreement § 22.]  Separate from his challenge to the arbitration clause on the whole, Plaintiff argues the forum selection provision is invalid because he resides in San Diego and traveling to New Jersey to arbitrate would be "seriously inconvenient."  [Pl.'s Opp'n, at 7-8.]  He also argues the provision is unenforceable because it contravenes California's strong public policy against post-employment noncompete provisions in employment contracts.  [<u>Id.</u> at 8-9.]  Defendant counters that Plaintiff's alleged inconvenience is insufficient to invalidate the forum selection provision and that the provision does not contravene California policy.  [<u>See</u> Def.'s Reply, 6-7.]

---

[5] Defendant argues the arbitration clause precludes punitive, but not "statutory penalties." [Def.'s Reply, at 5.]  Defendant does not, however, attempt to square this claim with the language of the Agreement—which prohibits "*any* . . . penalty" damages [Agreement, § 22 (emphasis added)]— and the language of Labor Code section 203—which expressly imposes "penalty" damages on employers that violate section 201.

"Forum selection clauses 'should be respected as the expressed intent of the parties.'" Swenson v. T-Mobile USA, Inc., 415 F. Supp. 2d 1101, 1104 (S.D. Cal. 2006) (quoting Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 280 (9th cir. 1984)).  They are presumptively valid, and thus "should be honored 'absent some compelling and countervailing reason.'" Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)).  A forum selection clause is valid unless:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

R.A. Arguenta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996) (internal quotation marks and citations omitted).  "The party challenging the clause bears a 'heavy burden of proof.'" Murphy, 362 F.3d at 1140 (quoting M/S Bremen, 407 U.S. at 17).

Plaintiff has not alleged the forum selection provision resulted from fraud or undue influence.  Indeed, the forum selection provision is a component of the arbitration clause, which the Court has already found not to have resulted from an abuse of bargaining power.

Plaintiff claims to reside in San Diego.  [See Pl.'s Opp'n., at 7-8.]  Plaintiff conceded at oral argument, however, that his San Diego residence will not render proceedings in New Jersey so inconvenient as to deprive him of his day in court.

Finally, Plaintiff argues enforcing the forum selection clause will contravene California's strong public policy against post-employment noncompete agreements.  But Plaintiff does not challenge the forum selection clause directly, only its possible effect: the application of New Jersey law.  Thus, Plaintiff's argument conflates the forum-selection and choice-of-law inquiries.  See Swenson, 415 F. Supp. at 1104.  Even assuming, arguendo, the *application of New Jersey law* may lead to a result that contravenes California policy, Plaintiff makes no showing that enforcing the venue provision presents any potential for such a conflict.  See id. (addressing the same issue on nearly

identical facts and finding that "[e]nforcement of the forum selection clause itself here does not contravene a strong public policy of California").[6]  Therefore, the forum selection provision is valid and enforceable.

### III.      Choice-of-Law Clause

Plaintiff does not dispute that his claims fall within the Agreement's choice-of-law clause. Plaintiff instead argues the clause runs counter to California's policy against post-employment noncompete agreements.

In diversity cases, federal courts must apply the conflict-of-law principles of the forum state. S.A. Empresa v. Boeing, Co., 641 F.2d 746, 749-50 (9th Cir. 1981).  To determine whether the choice-of-law clause is enforceable, the Court must first determine whether the chosen state has a substantial relationship to the parties or their transaction, or whether there is any other reasonable basis for the parties' choice of law.  Wash. Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 916-17 (2001).  If either test is met, "the parties choice will generally be enforced unless the other side [here, Plaintiff] can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue."  Id. at 917. Under California law, choice-of-law provisions are presumptively enforceable, and California has "strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses."  Id. 916-17; see also id. ("When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship.") (internal quotation marks omitted).

---

[6] In Swenson, the employer had already initiated a proceeding in Washington State, and the court in Washington ruled on the issue one year before Plaintiff brought suit in the Southern District of California.  Plaintiff attempts to distinguish Swenson as procedurally distinguishable, arguing the "court in Swenson was obviously attempting to avoid duplicative litigation and inconsistent determinations between the courts in two different states."  [Pl.'s Opp'n, at 11.]  Plaintiff's argument is unpersuasive.  First, nothing in Swenson hints at the concerns Plaintiff suggests animated the Court's decision.  Second, Swenson's reasoning is clear and unrelated to the procedural stance of that case: the choice-of-law analysis is distinct from the forum-selection analysis. Third, other courts have relied on Swenson for precisely this issue.  E.g., Mahoney v. Depuy Orthopaedics, Inc., 2007 WL 3341389, at *8-10 (E.D. Cal. Nov 08, 2007); Mazzola v. Roomster Corp., 2010 WL 4916610, *3-5 (C.D. Cal. Nov 30, 2010); Besag v. Custom Decorators, Inc., 2009 WL 330934, at *4-6 (N.D. Cal. Feb 10, 2009).

Plaintiff does not dispute that New Jersey has a substantial relationship to the parties or their transaction.  Plaintiff makes no showing that New Jersey law is contrary to California policy or that California has a materially greater interest in resolving the disputes under the Agreement. Accordingly, choice-of-law clause is valid and enforceable.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:** April 4, 2011

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**